**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacob Benson, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Casa De Capri Enterprises LLC, et al., <br><br> Defendants. | No. CV-18-00006-PHX-DWL <br><br> **ORDER** |

Pending before the Court are six motions: (1) Defendant Continuing Care Risk Retention Group Incorporated's ("CCRRG") motion for judgment on the pleadings (Doc. 38); (2) Plaintiffs' motion to allow repleading and joinder of new claims (Doc. 40); (3) Plaintiffs' motion for summary judgment (Doc. 55); (4) CCRRG's renewed motion to compel arbitration (Doc. 63); (5) third-party National Risk Retention Association's motion to file amicus curiae brief (Doc. 66); and (6) CCRRG's motion to strike Plaintiffs' statement of facts in support of their summary judgment motion (Doc. 75). The Court will first address CCRRG's renewed motion to compel arbitration (Doc. 63) to assure itself that Plaintiffs' claims are not required to be arbitrated before expending judicial resources addressing the other pending motions.

CCRRG renewed its motion to compel arbitration in light of new circumstances that arose after Judge Logan ruled on the original motion.[1] Those new circumstances, as well as new case law the Court has uncovered in researching the issues presented in the renewed

---
[1] This case was originally assigned to Judge Steven P. Logan and was transferred to the undersigned judge on October 31, 2018. (Doc. 35.)

motion, have potentially called into question the conclusion reached in Judge Logan's order. Accordingly, the Court will give the parties the opportunity to submit supplemental briefing responding to the case law presented below.

I. Factual Background

In December 2012, Jacob Benson, his parents, and his son (together, "Plaintiffs") filed suit in Maricopa County Superior Court against Casa De Capri Enterprises LLC ("Casa De Capri"), a skilled nursing facility. (Doc. 1-1 at 5-15.)

At the time the suit was filed, Casa De Capri had a "claims-paid" professional liability and general liability insurance policy with CCRRG. The policy covered the period between January 1, 2012 and December 31, 2012, and Casa De Capri later renewed the policy to cover the period between January 1, 2013 and December 31, 2013 (Doc. 13-1 at 5-47).

As relevant here, Casa De Capri and CCRRG had entered into two agreements with arbitration provisions. First, the parties entered into a Subscription Agreement (Doc. 13-1 53-73) in September 2009 containing an arbitration provision (*id.* at 72). Second, the 2013-2014 policy agreement contained an arbitration provision. (*Id.* at 41-42.)

Casa De Capri canceled its policy with CCRRG effective August 1, 2013 (*id.* at 49) and then filed for bankruptcy on August 19, 2013 (2:13-bk-14269-EPB). Upon Casa De Capri's cancellation of the policy, CCRRG withdrew from defending Casa De Capri in Plaintiffs' lawsuit.

On December 1, 2013, Plaintiffs obtained a judgment against Casa De Capri. (Doc. 1-2 at 231-32.) On December 18, 2013, Plaintiffs sought a writ of garnishment against CCRRG for the judgment amount plus interest. *Id.* at 233-35. On January 2, 2018, the garnishment action was removed to this Court. (Doc. 1.)

II. Procedural Background

On January 9, 2018, CCRRG moved to dismiss, or, alternatively, to stay litigation and compel arbitration. (Doc. 13.) CCRRG's motion was premised on three main contentions: (1) the arbitration agreements were valid; (2) Plaintiffs' "claims [were] fully

encompassed within the scope of the agreement[s]"; and (3) Plaintiffs "are claiming rights that Casa de Capri had under the CCRRG Policy as assignees of Casa de Capri, thus they stand in the shoes of Casa de Capri and are subject to the arbitration agreement[s] between CCRRG and Casa de Capri." *Id.* Plaintiffs responded on January 20, 2018, contending that (1) they were strangers to the arbitration clauses and therefore could not be bound, given that they had never been assigned Casa De Capri's claims; (2) the clauses were contrary to Casa De Capri's reasonable expectations; and (3) the clauses were procedurally and substantively unconscionable. (Doc. 17.) CCRRG filed its reply on January 29, 2018. (Doc. 22.)

On August 17, 2018, Judge Logan denied CCRRG's motion. (Doc. 27.) That order reasoned that "no circumstances appear to suggest that any of the contract or agency principles that would provide an exception binding the Plaintiffs to arbitration per the terms of the insurance agreement apply." (Doc. 27 at 4.) Specifically, it found that "Plaintiffs never assumed the insurance contract between the Defendant and Casa de Capri, and the Defendant does not set forth any evidence that the Plaintiffs received any benefit from the agreement between the Co-Defendants." (*Id.*) Additionally, the last paragraph cited an Arizona Court of Appeals opinion, *Able Distributing Co., Inc. v. James Lampe, General Contractor*, 773 P.2d 504 (Ariz. Ct. App. 1989), for the proposition that "it is well settled under Arizona law that actions for garnishment do not bind a non-signatory garnishing creditor to the terms of an agreement with an arbitration clause." (*Id.* at 4-5.)

Since that order was issued, Plaintiffs have moved to amend their complaint to add claims for (1) a declaratory judgment regarding coverage for the underlying judgment and (2) insurance bad faith. (Doc. 40-1 at 8-10.) Plaintiffs have also moved for summary judgment on their garnishment claim. (Doc. 55.)

On April 18, 2019, CCRRG filed a renewed motion to compel arbitration. (Doc. 63.) CCRRG argues that, although Plaintiffs asserted in their response to the initial motion to compel arbitration that they weren't seeking to collect from CCRRG as an assignee of Casa De Capri's contract, Plaintiffs have since made clear their "intent to pursue claims as

assignees" by (1) seeking "broad discovery on issues related to the proposed breach of contract and bad faith claims," (2) seeking to add breach of contract and bad faith claims in an amended complaint, and (3) "mov[ing] for summary judgment seeking to void certain provisions in the CCRRG Policy." (*Id.* at 1-4, 6-9, 11.)

In response, Plaintiffs make the same main argument they made in response to the initial motion: the garnishment action is not premised on an assignment of Casa De Capri's claims under the insurance contract, and therefore Plaintiffs, as non-signatories to the contracts between Casa De Capri and CCRRG, cannot be compelled to arbitrate the garnishment claim. (Doc. 70.) In a similar vein, Plaintiffs argue that CCRRG's renewed motion is a "repeat" of its previous motion to compel arbitration that Judge Logan denied, and "the law of the case doctrine applies to preclude a rehash of same." (*Id.* at 2.)

III. Discussion

As an initial matter, the law of the case does not prevent the Court from reconsidering its prior orders. *See, e.g.*, *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019) (noting that although "[t]he law of the case doctrine generally precludes reconsideration of an issue that has already been decided by the same court . . . in the identical case[,] . . . the law of the case doctrine does not apply if the court is convinced that its prior decision is clearly erroneous and would work a manifest injustice") (citations and internal quotation marks omitted); *United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984) ("The doctrine expresses only the practice of courts generally to refuse to reopen questions formerly decided, and is not a limitation of their power.").

On the merits, the Ninth Circuit has held that "[t]raditional principles of state law determine whether a contract [may] be enforced by or against nonparties to the contract through . . . third-party beneficiary theories . . . and estoppel." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (citation and internal quotation marks omitted); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (requiring courts to apply "state contract law" when determining whether "a written arbitration provision is made enforceable against (or for the benefit of) a third party"). Thus, the Court must look

to traditional principles of Arizona law to determine whether the arbitration provisions in the contracts between CCRRG and Case De Capri can be enforced against Plaintiffs.

Arizona law is not a model of clarity on this issue. On the one hand, *Able Distribution Co. v. James Lampe, General Contractor*, 773 P.2d 504 (Ariz. Ct. App. 1989), which Plaintiffs cited in their response to the initial motion to compel arbitration (Doc. 17 at 5) and which Judge Logan cited in his order (Doc. 27 at 4-5), contains broad, unqualified language that seems to suggest a garnishing creditor cannot be bound by an arbitration clause in a contract between the judgment debtor and garnishee. *Id.* at 515 (holding that "A.R.S. § 12–1501 [Arizona's arbitration statute] binds only the parties to the arbitration agreement, and is therefore inapplicable to non-parties such as Able," that "Able cannot be bound to arbitrate in the absence of its assent to specific contractual language clearly obligating it to do so," and that "[p]arties to a contract which includes an arbitration clause cannot control the rights of a non-party garnishing creditor such as *Able*"). On the other hand, the *Able* court wasn't asked to decide whether the doctrine of equitable estoppel provided a potential exception to the general principle that non-parties cannot be bound by an arbitration agreement—that issue simply wasn't before the court. And subsequent Arizona cases have seemed to recognize that equitable estoppel may serve as a potential exception to the general principle articulated in *Able*. *Duenas v. Life Care Ctrs. Of Am., Inc.*, 336 P.3d 763, 772 (Ariz. Ct. App. 2014) (citing *Able* for the "general rule" that "a party . . . is not bound to arbitrate disputes it has not specifically agreed to arbitrate" but clarifying that "[t]here are some exceptions to the general rule," which "include incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary."); *Schoneberger v. Oelze*, 96 P.3d 1078, 1081 (Ariz. Ct. App. 2004) ("In the arbitration context, a nonsignatory to an agreement requiring arbitration may be estopped, that is, barred, from avoiding arbitration if that party is claiming or has received direct benefits from the contract.").

Moreover, the Court has identified three recent cases from the Central District of California that compelled arbitration, based upon California and/or general equitable

- 5 -

estoppel principles, under circumstances similar to those here. First, in *Allied Professionals Insurance Co. v. Anglesey*, 2018 WL 6219926 (C.D. Cal. 2018), a patient and his wife sued a chiropractor for malpractice. *Id.* at *1. The chiropractor had professional liability insurance policies that contained arbitration provisions. *Id.* The couple and the chiropractor stipulated to a judgment against the chiropractor and the couple agreed to seek judgment only against the chiropractor's insurer through an assignment of the chiropractor's rights under the insurance policies. *Id.* at *2. After the couple filed suit in a different jurisdiction, the insurer asked the court to find that the couple was required to arbitrate their claims. The court held that the couple was bound by the arbitration agreement, finding that "[a]lthough the [couple] are not signatories to the [insurance policy], they have clearly exploited the agreement to claim its benefits," as "[t]hey have filed suit against [the insurer] in Washington as the purported assignees of [the chiropractor's] rights under the Policy, and they are seeking to collect insurance proceeds under it." *Id.* at *5.

Second, in *Allied Professionals Insurance Co. v. Miller*, 2015 WL 12747654 (C.D. Cal. 2015), the court found that an injured party was bound by the arbitration agreement between the insured and insurer where the injured party had obtained an assignment of the insured's claims against the insurer. *Id.* at *5. The court there reasoned that "it [was] incongruous for [the injured party] to assert the 'rights, title, and interest' arising from [the insured's] Policy while at the same time avoiding its binding terms, including a consent to arbitrate all claims in California." *Id.*

Third, the most factually analogous decision (because it involved a garnishment action, not a formal assignment of claims) is *Allied Professionals Insurance Co. v. Harmon*, 2017 WL 5634600 (C.D. Cal. 2017). There, the plaintiff filed a writ of garnishment against an insurer after obtaining a judgment against the insured. The court applied the doctrine of equitable estoppel to grant the insurer's motion to compel arbitration, concluding:

> While equitable estoppel is a narrow exception to the non-party rule, it plainly applies here. Harmon . . . filed a writ of garnishment against Allied to collect amounts allegedly owed under Dr. Rita Hughes's policy, which

includes the arbitration provision in question. . . . There is no more direct exploitation of a contract than attempting to collect money owed under that agreement. Accordingly, in his attempts to collect under the policy, Harmon cannot avoid the same agreement's arbitration provision.

*Id.* at *4.

Given the above-cited case law, the Court requests supplemental briefing from the parties regarding the applicability of equitable estoppel under Arizona law in the circumstances of this case. Further, the Court notes that Plaintiffs' response to the original motion to compel arbitration contained some additional arguments that aren't contained in their response to the renewed motion. In their original response, in addition to arguing that they should not be bound by the arbitration clauses because the garnishment action is not premised on an assignment of Casa De Capri's claims, Plaintiffs argued that the arbitration clauses were unenforceable and unconscionable. (Doc. 17 at 11-15.) Plaintiffs are welcome to renew those arguments in their supplemental brief and CCRRG is welcome to address those issues, too.

Accordingly, **IT IS ORDERED** that the parties submit supplemental briefs addressing the above-mentioned issues by **June 17, 2019**. No responses or replies to the supplemental briefs are permitted. Each brief shall not exceed 10 pages in length.

Dated this 31st day of May, 2019.

Dominic W. Lanza
United States District Judge