**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacob Benson, et al., | No. CV-18-00006-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Casa De Capri Enterprises LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendant Continuing Care Risk Retention Group Incorporated's ("CCRRG") renewed motion to compel arbitration. (Doc. 63.) The Court requested supplemental briefing on this motion, which the parties have provided. (Docs. 81, 82.) The Court also held oral argument on July 25, 2019. For the following reasons, the Court grants the motion to the extent CCRRG requests dismissal without prejudice.

**BACKGROUND**

I. Factual Background

In December 2012, Jacob Benson, his parents, and his son (together, "Plaintiffs") filed suit in Maricopa County Superior Court against Casa De Capri Enterprises LLC ("Casa De Capri"), a skilled nursing facility. (Doc. 1-1 at 5-15.)

Casa De Capri had purchased a number of successive annual "claims-paid" insurance policies from CCRRG. The policies for the 2012-2013 and 2013-2014 periods contained arbitration provisions. (Doc. 13-1 at 41-42; Doc. 56-1 at 30.) Casa De Capri and CCRRG had also entered into a Subscription Agreement (Doc. 13-1 at 53-73) in

September 2009 containing an arbitration provision (*id.* at 72), which was incorporated into the policies (*id.* at 6; Doc. 56-1 at 37). These arbitration provisions provided that arbitration would take place in Sonoma County, California. (Doc. 13-1 at 41-42, 72; Doc. 56-1 at 30.)

Casa De Capri canceled its policy with CCRRG effective August 1, 2013 (Doc. 13-1 at 49) and then filed for bankruptcy on August 19, 2013 (2:13-bk-14269-EPB). Upon Casa De Capri's cancellation of the policy, CCRRG withdrew from defending Casa De Capri in Plaintiffs' lawsuit.

On November 29, 2017, Plaintiffs obtained a $1,501,069.90 judgment against Casa De Capri. (Doc. 1-2 at 231-32.) On December 18, 2017, Plaintiffs sought a writ of garnishment against CCRRG. (*Id.* at 233-35.) On January 2, 2018, the garnishment action was removed to this Court. (Doc. 1.)

II. Procedural Background

On January 9, 2018, CCRRG moved to dismiss, or, alternatively, to stay litigation and compel arbitration. (Doc. 13.) CCRRG's motion was premised on three main contentions: (1) the arbitration agreements were valid; (2) Plaintiffs' "claims [were] fully encompassed within the scope of the agreement[s]"; and (3) Plaintiffs "are claiming rights that Casa de Capri had under the CCRRG Policy as assignees of Casa de Capri, thus they stand in the shoes of Casa de Capri and are subject to the arbitration agreement[s] between CCRRG and Casa de Capri." (*Id.*) Plaintiffs responded on January 20, 2018, contending that (1) they were strangers to the arbitration clauses and therefore could not be bound; (2) the clauses were contrary to Casa De Capri's reasonable expectations; and (3) the clauses were procedurally and substantively unconscionable. (Doc. 17.) CCRRG filed its reply on January 29, 2018. (Doc. 22.)

On August 17, 2018, Judge Logan issued an order denying CCRRG's motion. (Doc. 27.)[1] That order reasoned that "no circumstances appear to suggest that any of the contract

---

[1] This case was originally assigned to Judge Steven P. Logan and was transferred to the undersigned judge on October 31, 2018. (Doc. 35.)

- 2 -

or agency principles that would provide an exception binding the Plaintiffs to arbitration per the terms of the insurance agreement apply." (Doc. 27 at 4.) Specifically, it found that "Plaintiffs never assumed the insurance contract between the Defendant and Casa de Capri, and the Defendant does not set forth any evidence that the Plaintiffs received any benefit from the agreement between the Co-Defendants." (*Id.*) Additionally, the last paragraph cited an Arizona Court of Appeals opinion, *Able Distributing Co., Inc. v. James Lampe, General Contractor*, 773 P.2d 504 (Ariz. Ct. App. 1989), for the proposition that "it is well settled under Arizona law that actions for garnishment do not bind a non-signatory garnishing creditor to the terms of an agreement with an arbitration clause." (*Id.* at 4-5.)

After that order was issued, Plaintiffs moved to amend their complaint to add claims for (1) a declaratory judgment regarding coverage for the underlying judgment and (2) insurance bad faith. (Doc. 40-1 at 8-10.) Plaintiffs also moved for summary judgment on their garnishment claim. (Doc. 55.)

On April 18, 2019, CCRRG filed a renewed motion to compel arbitration. (Doc. 63.) CCRRG argued that, although Plaintiffs asserted in their response to the initial motion to compel arbitration that they weren't seeking to collect from CCRRG as an assignee of Casa De Capri's contract, Plaintiffs have since made clear their "intent to pursue claims as assignees" by (1) seeking "broad discovery on issues related to the proposed breach of contract and bad faith claims," (2) seeking to add breach of contract and bad faith claims in an amended complaint, and (3) "mov[ing] for summary judgment seeking to void certain provisions in the CCRRG Policy." (*Id.* at 1-4, 6-9, 11.)

In response, Plaintiffs made the same main argument they made in response to the initial motion: the garnishment action is not premised on an assignment of Casa De Capri's claims under the insurance contract, and therefore Plaintiffs, as non-signatories to the contracts between Casa De Capri and CCRRG, cannot be compelled to arbitrate the garnishment claim. (Doc. 70.) In a similar vein, Plaintiffs argued that CCRRG's renewed motion was a "repeat" of its previous motion to compel arbitration that Judge Logan denied, and "the law of the case doctrine applies to preclude a rehash of same." (*Id.* at 2.)

On May 31, 2019, the Court requested supplemental briefing regarding the applicability of equitable estoppel under Arizona law in the circumstances of this case. (Doc. 79.) The parties have since submitted their briefs. (Docs. 81, 82.) Plaintiffs have also withdrawn their motion to amend the complaint to add new claims. (Doc. 80.)

**ANALYSIS**

In response to the Court's order requesting supplemental briefing, Plaintiffs made three arguments: (1) Judge Logan's order should be treated as law of the case, thus preventing reconsideration of the arbitration issue; (2) equitable estoppel does not apply here because Plaintiffs have not obtained "direct benefits" under the contract during the life of the contract and CCRRG has not detrimentally relied on Plaintiffs' conduct; and (3) the right of a judgment creditor to garnish the debts of a judgment debtor in a garnishment proceeding is statutorily guaranteed and is a judicial remedy not subject to private arbitration. (Doc. 81.) Plaintiffs also "renewed and incorporated" the arguments contained in their earlier arbitration-related briefs (*id.* at 1), and Plaintiffs clarified during oral argument that this incorporation effort was intended to preserve their earlier arguments concerning unconscionability.

I.  Law Of The Case

The Court has already addressed the law-of-the-case argument in the order requesting supplemental briefing. (Doc. 79 at 4.) As noted in that order, the law of the case "doctrine expresses only the practice of courts generally to refuse to reopen questions formerly decided, and is not a limitation of their power." *United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984). Thus, the law of the case does not prevent the Court from revisiting the arbitration issue.

During oral argument, Plaintiffs suggested that, because CCRRG hadn't made any estoppel-related arguments during the initial round of briefing on its arbitration request (Docs. 13, 22), and because Plaintiffs have now withdrawn their motion to amend the complaint to add certain claims (Docs. 40, 80)—the motion that prompted CCRRG to file its renewed motion to compel arbitration (Doc. 63)—the Court should find that CCRRG

has forfeited its right to seek arbitration under an estoppel theory.

This argument is unavailing. In its initial motion to compel arbitration, CCRRG argued its arbitration agreement with Casa De Capri was "binding upon the Bensons as judgment creditors/assignees of Casa de Capri" in part because "[a]ll of the rights and claims the Bensons are asserting arise out of the CCRRG Policy and Subscription Agreement." (Doc. 13 at 8.) CCRRG also repeatedly cited *Labertew v. Langemeier*, 846 F.3d 1028 (9th Cir. 2017), for the proposition that Plaintiffs' garnishment claim was functionally a breach-of-contract claim under the insurance policy and argued that "as a garnishor/creditor, Benson would have no greater rights than the debtor to Garnishee's Policy." (Doc. 13 at 4, 11 n.11, 12 n.13.) Accordingly, Plaintiffs' forfeiture theory—even assuming it could have any impact on the law-of-the-case analysis—lacks merit. Although CCRRG may not have used the magic word "estoppel" in its initial set of briefs, it fairly presented the argument that Plaintiffs should be required to arbitrate their garnishment claim.

II.     Applicability Of Equitable/Direct-Benefits Estoppel

The Federal Arbitration Act ("FAA") "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Chalk v. T–Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (quoting 9 U.S.C. § 2). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma*, 560 F.3d 935, 940 (9th Cir. 2009).

The Ninth Circuit has further held that "[t]raditional principles of state law determine whether a contract [may] be enforced by or against nonparties to the contract through . . . third-party beneficiary theories . . . and estoppel." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (citation and internal quotation marks omitted); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (requiring courts to apply "state contract law" when determining whether "a written arbitration provision is made enforceable against (or for the benefit of) a third party"). Thus, the Court must look to traditional principles of Arizona law to determine whether the arbitration provisions in the contracts between CCRRG and Casa De Capri may be enforced against Plaintiffs. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017) ("Federal courts are required to ascertain from all the available data what the state law is and apply it . . . .") (quotation omitted).[2]

Under Arizona law, a nonsignatory to a contract may be bound by an arbitration agreement contained in the contract under the doctrine of direct-benefits estoppel (which is sometimes also referred to as equitable estoppel). The Arizona Court of Appeals has stated that "[u]nder direct benefits estoppel, a nonsignatory may be compelled to arbitrate only when the nonsignatory (1) knowingly exploits the benefits of an agreement containing an arbitration clause, or (2) seeks to enforce terms of that agreement or asserts claims that must be determined by reference to the agreement." *Austin v. Austin*, 348 P.3d 897, 906 (Ariz. Ct. App. 2015); *see also Schoneberger v. Oelze*, 96 P.3d 1078, 1081 (Ariz. Ct. App. 2004) ("In the arbitration context, a nonsignatory to an agreement requiring arbitration may be estopped, that is, barred, from avoiding arbitration if that party is claiming or has received direct benefits from the contract."); *Crawford Professional Drugs, Inc. v. CVS*

---

[2] During oral argument, CCRRG argued for the first time that the Court should apply South Carolina law rather than Arizona law. However, CCRRG also asserted, as it had asserted in its supplemental brief, that both states apply the same test for enforcement of arbitration provisions against non-signatories. (Doc. 82 at 6 n.4 ["Although Arizona law may apply to this question, CCRRG also notes that South Carolina, the domiciliary state for CCRRG at the time the Casa de Capri Policy was issued, also recognizes that equitable estoppel compels a nonsignatory to arbitration if it seeks 'to derive a direct benefit from the contract containing the arbitration provision.'"].)

*Caremark Corp.*, 748 F.3d 249, 261 (5th Cir. 2014) ("*Schoneberger* suggests that Arizona courts would likely accept an arbitration-by-estoppel theory . . . .").[3]

Plaintiffs argue they are not required to arbitrate their garnishment claim under the *Schoneberger/Austin* line of cases because they are not claiming "direct benefits" from the underlying insurance contract. (Doc. 81 at 10.) They elaborate: "[B]y garnishing the debt, the judgment creditor is not claiming any 'direct benefit' or contractual right. It is merely the assertion of an inchoate lien on the debt from the garnishee to the debtor." (*Id.*)

This argument is unavailing. In *Austin*, the Arizona Court of Appeals held, after noting that "there is a dearth of Arizona precedent on arbitration-by-estoppel," that "a nonsignatory may be compelled to arbitrate" under the doctrine of "direct benefits estoppel." 348 P.3d at 904, 906 (citation and internal quotation marks omitted). The *Austin* court further noted that the direct-benefits test can be satisfied in several ways, including when a party "asserts claims that must be determined by reference to the agreement." *Id.* at 906. That is exactly the situation here. In their pending motion for summary judgment, Plaintiffs are attempting to use their garnishment claim to knowingly exploit an insurance contract containing an arbitration clause and to assert claims that must be determined by reference to that contract. (Doc. 55 at 2 ["This Motion addresses only the purely legal issue[] of whether . . . the CCRRG policy provides coverage for the judgment up to the $1,000,000 policy limit."].) Indeed, Plaintiffs conclude their motion by arguing they "are entitled to summary judgment in their favor holding that the 2012 Policy provides

---

[3] As noted in the Court's order requesting supplemental briefing, although *Able Distribution Co. v. James Lampe, General Contractor*, 773 P.2d 504, 515 (Ariz. Ct. App. 1989), which Judge Logan cited in his order (Doc. 27 at 4-5), contains broad, unqualified language that seems to suggest a garnishing creditor cannot be bound by an arbitration clause in a contract between the judgment debtor and garnishee, the *Able* court wasn't asked to decide whether the doctrine of equitable/direct-benefits estoppel provided a potential exception to the general principle that non-parties cannot be bound by an arbitration agreement. Moreover, subsequent Arizona cases have seemed to recognize that such estoppel may serve as a potential exception to the general principle articulated in *Able*. *Duenas v. Life Care Ctrs. Of Am., Inc.*, 336 P.3d 763, 772 (Ariz. Ct. App. 2014) (citing *Able* for the "general rule" that "a party . . . is not bound to arbitrate disputes it has not specifically agreed to arbitrate" but clarifying that "[t]here are some exceptions to the general rule," which "include incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary").

coverage" for the judgment they obtained against Casa De Capri. (*Id.* at 17.) They also reference the bankruptcy clause and Continuing Membership Conditions to support their position that the policy provides coverage in these circumstances. (*Id.* at 4-11, 13-16.)[4] This is a textbook example of an attempt to knowingly exploit, and obtain direct benefits under, a contract.

This conclusion is bolstered by the Ninth Circuit's recent decision in *Labertew*. There, a judgment creditor obtained a judgment against a tortfeasor and then initiated a garnishment action in Arizona state court against the tortfeasor's insurance company. *Id.* at 1029-30. In response, the insurance company removed the case to federal court. *Id.* at 1030. The Ninth Circuit recognized that "*[t]his case now is in substance a claim by the insureds' assignee against the liability insurers for breaching their obligations under the insurance policies.*" *Id.* at 1034 (emphasis added). The court further observed that, although the "insurers' duties . . . were not relevant to and did not arise in the Arizona tort case," those contractual duties "will control the garnishment." *Id.* at 1031-32. *Labertew* thus makes clear that Plaintiffs' claim against CCRRG is fundamentally an attempt to obtain direct benefits under the CCRRG-Casa De Capri contract, because it must be determined by reference to the contract.[5]

This conclusion is further bolstered by three recent cases from the Central District of California that compelled arbitration, based upon California and/or general equitable estoppel principles, under circumstances similar to those here. Plaintiffs argue that two, *Professionals Insurance Co. v. Anglesey*, 2018 WL 6219926 (C.D. Cal. 2018), and *Allied*

---

[4] Similarly, Plaintiffs stated in response to the renewed motion for arbitration that "the issue at hand" in the garnishment proceeding is "whether CCRRG is liable under the insurance policy coverage for payment of the judgment." (Doc. 70 at 6.)

[5] *See also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (cited with approval in *Schoneberger*) (concluding that non-signatory was bound by arbitration agreement under direct-benefit test because the underlying "contract provides part of the factual foundation for every claim asserted by International Paper against Schwabedissen," "International Paper's entire case hinges on its asserted rights under the Wood–Schwabedissen contract," and a plaintiff "cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated").

*Professionals Insurance Co. v. Miller*, 2015 WL 12747654 (C.D. Cal. 2015), are inapposite because they involved direct claims against the insurer based upon assignment of the insured's claims, and here there was no assignment of the garnishment claim. (Doc. 81 at 6 n.4.) They also argue the third case, *Allied Professionals Insurance Co. v. Harmon*, 2017 WL 5634600 (C.D. Cal. 2017), was "incorrectly decided" because "the court gave no consideration to the fact that garnishment proceedings are entirely controlled by statute and cannot be relegated to a nonjudicial forum" and "the decision reflects a misunderstanding of the garnishment process which does not involve the garnishing creditor's affirmative and direct assertion of contractual rights." (Doc. 81 at 6.)

These arguments lack merit. Although Plaintiffs did not receive a formal assignment from Casa De Capri with respect to their garnishment claim (which would seemingly be impossible), they are nonetheless "exploit[ing] the agreement to claim its benefits," *Anglesey*, 2018 WL 6219926 at *5, and asserting rights under the policy while at the same time seeking to avoid its binding terms, *Miller*, 2015 WL 12747654 at *5. A nonsignatory can still exploit an agreement by asserting, through a garnishment theory, the contractual rights of others. *Labertew*, 846 F.3d at 1034 ("This case now is in substance a claim by the insureds' assignee against the liability insurers for breaching their obligations under the insurance policies."). Ultimately, Plaintiffs' claim will be decided by reference to the insurance policy. *Harmon*, 2017 WL 5634600 at *4 ("There is no more direct exploitation of a contract than attempting to collect money owed under that agreement.").

Plaintiffs also seek to rely on cases from outside Arizona in support of their position that a judgment creditor cannot be bound by an arbitration provision in a contract between a judgment debtor and a garnishee. The first case, *Penford Products Co. v. C.J. Schneider Engineering Co.*, 808 N.W.2d 443 (Iowa Ct. App. 2011), is somewhat similar factually, involving a party bringing a garnishment action against an insurer after obtaining a judgment against the insured. Nevertheless, the Court finds *Penford Products* unpersuasive. First, the court there rejected the insurer's arbitration demand in part because Iowa's "garnishment statute provides that this issue shall be decided by trial." *Id.* at 448.

But as discussed in Part III below, state procedural rules for garnishment proceedings are supplanted by the federal rules upon removal and state law cannot, in any event, prohibit the arbitration of a particular category of claims. Second, the court there also rejected the insurer's arbitration demand because "[w]hile the garnishor 'stands in the shoes' of the judgment debtors, this is in the context of the issue presented in the garnishment proceedings. It does not extend to the arbitration clause in the agreement between [the judgment debtors and the insurance company]." *Id.* This *ipse dixit* is difficult to reconcile with *Labertew*, which recognizes that the type of garnishment claim at issue here is "in substance a claim . . . against the liability insurers for breaching their obligations under the insurance policies." 846 F.3d at 1034. *See also Harmon*, 2017 WL 5634600 at *4 ("There is no more direct exploitation of a contract than attempting to collect money owed under that agreement.").

The facts of Plaintiffs' other case, *United States v. Harkins Builders, Inc.*, 45 F.3d 830 (4th Cir. 1995), are less similar. There, the judgment creditor brought a garnishment proceeding against a company with which the judgment debtor had a contract. *Id.* at 831-32. Unlike here, there was no insurance contract at issue. Also, *Harkins Builders* was a 2-1 decision that is not binding on this Court, and the dissenting judge there concluded—for reasons the Court finds persuasive and consistent with *Labertew*—that the arbitration provision should have been deemed enforceable. *Id.* at 837 (Phillips, J., dissenting) ("It seems unfair that a garnishee should be stripped of her contractual right to demand arbitration on the mere happenstance that the person asserting contractual rights against her is a nonparty whose interest arises only by virtue of the misfeasance of the garnishee's creditor. On the other hand, there is no unfairness of which the garnishing creditor can complain if the contract between garnishee and judgment creditor is construed to require him to arbitrate . . . .").

Plaintiffs also argue that "for equitable estoppel to apply, the 'direct benefit' or 'knowing exploitation' of the contract must have occurred while the contract was in force – not as a result of later judicial action." (Doc. 81 at 10.) In support of this proposition,

they cite *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001). But there, the Third Circuit observed only that equitable estoppel cases "[g]enerally . . . involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Id.* at 200. In any event, Plaintiffs have not cited any Arizona cases imposing such a temporal requirement and Arizona case law seems to be to the contrary. *Schoneberger*, 96 P.3d at 1081 ("In the arbitration context, a nonsignatory to an agreement requiring arbitration may be estopped, that is, barred, from avoiding arbitration if that party *is claiming* or has received direct benefits from the contract.") (emphasis added).

Finally, Plaintiffs also cite two cases for the proposition that "Arizona equitable estoppel law . . . requires proof of detrimental reliance." (Doc. 81 at 10.) These cases relate to equitable estoppel in an entirely different context, however, and are not applicable here. Also, even assuming for the sake of argument that detrimental reliance is required in this context, it is present. CCRRG has submitted evidence showing it relied on the presence of an arbitration clause when choosing to contract with Casa De Capri (Doc. 22-1 ¶ 8 [affidavit from CCRRG board member, averring that "[t]he arbitration provision in the CCRRG Claims Paid Policy and Subscription Agreement is a significant factor in CCRRG's ability to minimize its loss adjustment expenses related to coverage disputes"]), so it would detrimentally upset CCRRG's reliance interests to disregard that clause now.

III. <u>Whether Arizona Law Prevents Arbitration Of Garnishment Actions</u>

Plaintiffs argue that because "garnishment is a creature of statute," and A.R.S. § 12-1584 provides that "[t]he court, sitting without a jury, shall decide all issues of fact and law" in a garnishment proceeding, the garnishment claim cannot be arbitrated. (Doc. 81 at 3-11.) This argument fails for two reasons.

First, the Ninth Circuit in *Labertew* held that state procedural rules for garnishment proceedings are supplanted by the federal rules upon removal. 846 F.3d at 1034.

Second, state law cannot prohibit the arbitration of a particular type of claim. *See,*

*e.g., Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 533 (2012) ("West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); *Preston v. Ferrer*, 552 U.S. 346, 359 (2008) ("When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative."). Plaintiffs are effectively arguing that Arizona law prohibits the arbitration of garnishment claims, which the FAA does not allow.

IV. <u>Unconscionability</u>

In their response to CCRRG's original motion to compel arbitration—which Plaintiffs incorporated by reference in their most recent supplemental brief—Plaintiffs argued that the arbitration clauses at issue "are procedurally and substantively unconscionable insofar as they were un-bargained for, are one-sided, cause unreasonable burden and expense, deny the Bensons of a right to trial and appeal on important issues of Arizona public policy, and purport to require the Bensons to litigate in Sonoma County, California, a jurisdiction having no relationship whatsoever to the Bensons or this dispute." (Doc. 17 at 2.) Plaintiffs also argued that "discovery regarding [Casa De] Capri's reasonable expectations is necessary." (*Id.* at 12.)

In its reply, CCRRG argued (1) Plaintiffs' procedural unconscionability argument fails because "the present case involves two parties entering into a contract typical of any business with the assistance of an insurance agent," (2) Plaintiffs' request for discovery is meritless because the placement of the arbitration clause (it was set forth directly above the signature line of the contract) and Casa De Capri's utilization of an insurance agent during the process show "there is nothing about the arbitration clause that suggests that it did not meet the parties' reasonable expectations," (3) the forum-selection clause is not

substantively unconscionable because CCRRG utilizes California-based personnel to issue and administer its policies and it is permissible for companies to require arbitrations to occur where they are based, and (4) Plaintiffs' claim of personal financial hardship is both factually unsupported and irrelevant because the arbitration agreement requires the losing party to pay the prevailing party's fees. (Doc. 22 at 6-11.)[6]

"Unconscionability is a generally applicable contract defense that may render an arbitration agreement unenforceable under the FAA and it is determined according to the laws of the state of contract formation. Under Arizona law, the plaintiff bears the burden of proving the unenforceability of an arbitration provision, and the determination is made by the Court as a matter of law." *Edwards v. Vemma Nutrition*, 2018 WL 637382, *4 (D. Ariz. 2018) (citations omitted). A plaintiff may argue that an arbitration provision is both procedurally and substantively unconscionable. *Id.*

Plaintiffs have not met their burden of proving procedural unconscionability. "Procedural unconscionability arises from unfairness in the bargaining process." *Id.* The main case on which Plaintiffs rely, *Broemmer v. Abortion Services of Phoenix, Ltd.*, 840 P.2d 1013 (Ariz. 1992), involved a plaintiff who "was 21 years old, unmarried, and 16 or 17 weeks pregnant" and undergoing "considerable confusion and emotional and physical turmoil" at the time she signed an adhesion contract with an arbitration agreement that was presented to her by a sophisticated counterparty. *Id.* at 1014-15. This case is far different. The arbitration clause was contained in an insurance contract between two businesses, Casa De Capri and CCRRG, and Casa De Capri was represented by an insurance agent when deciding which insurer to retain. (Doc. 22-1 ¶ 10 ["Many other insurance carriers offer liability insurance to nursing homes, with varying terms and conditions. Casa de Capri had many different options for liability insurance and consulted with an insurance agent in Long Beach, California for the purpose of obtaining liability insurance."].) Plaintiffs have

---

[6] Although, as noted, CCRRG argued for the first time at the hearing that the Court should apply South Carolina law, it cited Arizona law in the portion of its reply addressing unconscionability. Plaintiffs also cited Arizona law in their brief. Thus, the Court will apply Arizona law.

- 13 -

not identified any Arizona cases upholding claims of procedural unconscionability under remotely similar circumstances. *Cf. Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1054 (Ariz. Ct. App. 2005) (upholding arbitration clause and distinguishing *Broemmer* because, "[i]n this case, the arbitration clause was part of a commercial transaction"). Indeed, "[u]nder Arizona law, . . . [t]he situations where [adhesive] contracts are found to be procedurally unconscionable are generally those where there are significant gaps in age, education, or income (such as in consumer contracts). Mere differences in bargaining power, even if significant, generally are not enough. Accordingly, courts have generally been reluctant to find contracts between merchants to be unconscionable." *Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*, 77 F. Supp. 3d 237, 245-46 (D. Mass. 2015) (citations omitted).[7]

Nor are Plaintiffs entitled to conduct additional discovery. In January 2018, Plaintiffs argued that additional discovery might reveal that Casa De Capri was not "a sophisticated business entity, run by sophisticated people" or that Casa De Capri "never read or understood the policies or the related Subscription Agreement, let alone the arbitration clauses buried therein." (Doc. 17 at 12-13.) Plaintiffs thus argued that "at a minimum the Bensons believe that they must be allowed to obtain CCRRG's files and materials relating to the Subscription Agreement and insurance policies, including underwriting and marketing materials and drafting history documents. The Bensons also must be entitled to discovery regarding the identity of the persons involved on behalf of

---

[7] Other courts have similarly declined to find procedural unconscionability in cases involving commercial contracts between companies. *See, e.g., Cunico Corp. v. Custom Alloy Corp.*, 2019 WL 2895148, *2 (9th Cir. 2019) (concluding that "[t]he arbitration clause is neither procedurally nor substantively unconscionable" because "Cunico and Custom Alloy are both business entities with equal bargaining power that spent months negotiating the terms of their agreement" and "there is nothing shocking to the conscience when two business entities agree that a commercial dispute will be arbitrated in New York"); *Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1182 (N.D. Cal. 2013) ("[T]he authorities that Uptown cites in support of its procedural unconscionability arguments are not on point, because they deal with situations involving unsophisticated individuals who were presented with take-it-or-leave-it contracts by parties who had overwhelming bargaining power. The agreement here involves two business entities, and Uptown provides no evidence to show that it was in any way unsophisticated or that PCS Health or its successors, including Caremark, had overwhelming relative bargaining power.").

- 14 -

CCRRG and [Casa De] Capri, and their agents, and to take the depositions of the key players." (Doc. 17-1 ¶ 8.)

These arguments fail for two reasons. First, they were speculative at the time they were made. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) ("[F]or purposes of a Rule 56(d) request, the evidence sought must be more than 'the object of pure speculation.'") (citation omitted). As noted, Casa De Capri was a nursing home that was represented by a third-party insurance agent when it ultimately chose to contract with CCRRG. It strains credulity to believe that nobody associated with Casa De Capri bothered to read the contract, and Plaintiffs' filings in January 2018 didn't identify any specific reason to suspect otherwise. Second, in the 18 months since Plaintiffs made their request for more time to conduct discovery, they've obtained much, if not all, of the discovery they identified in their Rule 56(d) affidavit. For example, Plaintiffs have now deposed Casa De Capri's former president and CEO, Gregory Anderson (Doc. 53), and obtained two declarations from Mr. Anderson (Docs. 56-9, 56-10 at 2-10). In those declarations, Mr. Anderson stated, among other things, that he has "been involved in the skilled nursing and senior case industries for a great many years" (Doc. 56-9 ¶ 20) and described Casa De Capri as "a for-profit, skilled nursing facility providing post-acute care to people . . . [that] currently has approximately 140 full- and part-time employees" (Doc. 56-10 at 3 ¶ 4). These statements undermine any suggestion Casa De Capri was an unsophisticated business being run by unsophisticated people. Also, Plaintiffs have now deposed Robert Bates, a CCRRG official. (Doc. 51 [deposition notice]; Doc. 56 ¶ 3 [Plaintiffs' separate statement in support of summary judgment motion, referring to the transcript of the Bates deposition].) Thus, Plaintiffs have now had the chance "to take the depositions of the key players." (Doc. 17-1 ¶ 8.) And Plaintiffs also have now received CCRRG's "underwriting documents pertaining to Casa de Capri" (Doc. 56-5 ¶ 3), which is another category of discovery they identified in their Rule 56(d) affidavit (Doc. 17-1 ¶ 8).

Plaintiffs also have not established the arbitration clause is substantively unconscionable. "Substantive unconscionability is concerned with the relative fairness of

the actual contract terms." *Edwards*, 2018 WL 637382 at *4. The only specific provision that Plaintiffs seek to challenge is the forum-selection provision, which provides that any arbitration must take place in California. Forum-selection clauses are generally valid and enforceable under Arizona law. *Societe Jean Nicholas Et Fils v. Mousseaux*, 597 P.2d 541, 543 (Ariz. 1979) ("[W]e hold that a forum selection clause that is fairly bargained for and not the result of fraud will be enforced so long as to do so is reasonable at the time of litigation and does not deprive a litigant of his day in court."). "The party claiming oppression or unfairness must meet a heavy burden of proof, even when the designated forum is in a geographically remote location. Mere physical inconvenience and increased costs are not enough to defeat a forum selection clause." *Bennett v. Appaloosa Horse Club*, 35 P.3d 426, 431 (Ariz. Ct. App. 2001) (citations omitted). Also, although some states consider factors "such as convenience and the state's interest in the lawsuit" when evaluating the enforceability of forum-selection clauses, "the Arizona test for reasonableness does not include those factors." *Desarrollo Immobiliario y Negocios Industriales De Alta Tecnologia De Hermosillo, S.A. De C.V. v. Kader Holdings Co..* 276 P.3d 1, 7 (Ariz. Ct. App. 2012).

Here, Plaintiffs have not shown that the forum-selection clause in the contract between Casa De Capri and CCRRG was the product of fraud or unfair bargaining. Additionally, many of Plaintiffs' arguments concerning why it would be unfair to require them to travel to California for arbitration—inconvenience and Arizona's purported interest in having issues of "Arizona public policy" resolved in an Arizona forum (Doc. 17 at 2)—are not cognizable under "the Arizona test for reasonableness." *Kader Holdings*, 276 P.3d at 7.

Finally, Plaintiffs have not met their burden of showing that enforcing the arbitration clause would effectively deny them a day in court (an argument they raise both with respect to the forum-selection clause and, more broadly, as a reason why they shouldn't be required to arbitrate). In *Harrington*, the Arizona Court of Appeals acknowledged that a litigant may avoid arbitration by "demonstat[ing] that arbitration would be prohibitively

1 expensive" but held the plaintiffs there hadn't made a sufficient showing on this issue—
2 even though they submitted affidavits "stat[ing] that a cost of 'even a few thousands
3 dollars' for arbitration would disallow them from bringing the lawsuit"—because (1)
4 "Appellees' claims are for amounts between $500,000 and $1,000,000," so "[t]he costs . .
5 . are small when compared to the amount they seek to recover and compared to the amount
6 they would likely have to pay in litigation expenses if arbitration were not available," (2)
7 "the rules of arbitration applicable here allow for the deferral or reduction of the
8 administrative fees associated with arbitration . . . 'in the event of extreme hardship on the
9 part of any party,'" and (3) given the amount of damages being sought, "[o]ne obvious
10 possibility is that an attorney would take the case on a contingency basis and advance [the
11 arbitration] costs." 119 P.3d at 1055-56. Here, similarly, Plaintiffs already have a $1.5
12 million judgment against Casa De Capri and seek to recover at least $1 million from
13 CCRRG. Additionally, Plaintiffs have not submitted the sort of affidavits of indigency that
14 were submitted in *Harrington*.

V. <u>Dismissal</u>

Although CCRRG's motion requested an order "dismissing this action and compelling arbitration" or, alternatively, an order "staying this action pending arbitration" (Doc. 63 at 1), CCRRG clarified during oral argument that it is seeking dismissal without compelled arbitration. When faced with a valid and enforceable arbitration provision, a district court has discretion to either (1) stay the case pending the completion of the arbitration or (2) dismiss the case without prejudice. *See, e.g., Kam-Ko Bio-Pharm Trading Co.*, 560 F.3d at 940; *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). Accordingly, the Court will dismiss the case without prejudice. *See also Altela Inc. v. Ariz. Science & Tech. Enterprises, Inc.*, 2016 WL 4539949, *8 (D. Ariz. 2016) ("[A]ll of Altela's claims are subject to mandatory arbitration. The Court will dismiss this case rather than staying it.").

…

…

Accordingly, **IT IS ORDERED** that:

1. CCRRG's renewed motion to compel arbitration (Doc. 63) is **granted** to the extent CCRRG seeks dismissal without prejudice;
2. CCRRG's motion for judgment on the pleadings (Doc. 38) is **denied as moot**;
3. Plaintiffs' motion for summary judgment (Doc. 55) is **denied as moot**;
4. The motion to file an amicus curiae brief (Doc. 66) is **denied as moot**;
5. CCRRG's motion to strike (Doc. 75) is **denied as moot**; and
6. This case is **dismissed without prejudice**. The Clerk of Court shall enter judgment accordingly.

Dated this 30th day of July, 2019.

Dominic W. Lanza
United States District Judge