**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacob Benson, et al., | No. CV-18-00006-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Casa De Capri Enterprises LLC, et al., | |
| Defendants. | |

This order addresses the parties' statements regarding post-remand proceedings (Docs. 112, 113), as well as Plaintiffs' motion for attorneys' fees on appeal (Doc. 109).

**BACKGROUND**

Jacob Benson is a disabled vulnerable adult who received skilled nursing care at a now-defunct facility called Casa de Capri Enterprises, Inc. ("Capri"). In December 2012, Benson and other family members (together, "Plaintiffs") brought a negligence action against Capri in Maricopa County Superior Court. (Doc. 1-1 at 5-15.) At the time, Capri had a "Claims Paid & Reported Liability" insurance policy, which was issued by Defendant Continuing Care Risk Retention Group, Inc. ("CCRRG"). (Doc. 56-1.) Pursuant to this policy, CCRRG assumed Capri's defense of the lawsuit. (Doc. 56 ¶¶ 20-21.)

In 2013, Capri experienced financial difficulties. (*Id.* ¶¶ 24-44.) These difficulties caused Capri to default on its payment obligations to CCRRG, then file for bankruptcy, and eventually cancel its insurance policy. (*Id.*) Afterward, CCRRG withdrew its defense of Plaintiffs' lawsuit. (*Id.* ¶¶ 45-47.) In November 2017, after the bankruptcy stay was

lifted, Plaintiffs obtained a judgment of just more than $1.5 million against Capri. (Doc. 1-2 at 231-32.)

Plaintiffs' judgment against Capri forms the backdrop for this lawsuit, which is procedurally complex (to put it mildly). In December 2017, Plaintiffs served a writ of garnishment on CCRRG. (Doc. 1 ¶ 2; Doc. 1-2 at 233-35, 238-39.) In response, CCRRG removed the action to federal court[1] and then moved to compel arbitration. (Docs. 1, 13.) Although the district judge to whom the case was originally assigned denied CCRRG's motion (Doc. 27), CCRRG filed a renewed motion to compel arbitration after the case was reassigned to the undersigned judge (Docs. 35, 63) and the Court eventually granted that motion, holding that even though Plaintiffs were non-signatories to the insurance policy between Capri and CCRRG, they were bound by the arbitration clause in that policy under Arizona's doctrine of direct benefits estoppel. (Doc. 88.) Based on this ruling, the Court also denied, as moot, four other motions that were pending at the time, including Plaintiffs' motion for summary judgment on the core disputed issue in this case—whether Plaintiffs' negligence claim against Capri is covered by Capri's CCRRG insurance policy, and by extension whether Plaintiffs may recover from CCRRG via the law of garnishment.[2]

Plaintiffs appealed the order compelling arbitration to the Ninth Circuit, which in turn certified a question of law to the Arizona Supreme Court. In January 2022, the Arizona Supreme Court resolved that question in Plaintiffs' favor, holding that "the doctrine of direct benefits estoppel can[not] be applied in an Arizona garnishment proceeding." *Benson v. Casa de Capri Enterprises, LLC*, 502 P.3d 461, 465 (Ariz. 2022). Based on this ruling, the Ninth Circuit issued an amended memorandum decision in March 2022 concluding that "the district court erred in granting CCRRG's motion to compel arbitration under the doctrine of direct benefits estoppel." *Benson v. Casa de Capri Enterprises, LLC*, 2022 WL 822126, *1 (9th Cir. 2022). In a footnote, the Ninth Circuit also stated the

---

[1] The Ninth Circuit has held that a "garnishment proceeding against . . . insurers is, for purposes of removal, a separate and independent civil action" that is "removable." *Labertew v. Langemeier*, 846 F.3d 1028, 1031-32 (9th Cir. 2017).

[2] Under Arizona law, "[i]t is undisputed that insurance loss obligations can be garnished." *Benson v. Casa de Capri Enterprises, LLC*, 502 P.3d 461, 465 (Ariz. 2022).

following: "CRRG alternatively argues that the Liability Risk Retention Act of 1986 (LLRA) preempts state law governing the operation of risk retention groups, and apparently by extension precludes Arizona from limiting arbitration provisions in insurance policies provided by a risk retention group. The district court did not address this argument and [Plaintiffs] argue that CCRRG did not adequately raise it below. We leave these matters to the district court in the first instance, with the benefit of the Arizona Supreme Court's new guidance." *Id.* at *2 n.1.

After the mandate issued, the Court solicited supplemental briefing from the parties about how to proceed. (Doc. 106.) The parties have now filed their briefs. (Docs. 112, 113.) Additionally, Plaintiffs have filed a motion for their attorneys' fees on appeal, which is also fully briefed. (Docs. 109, 110, 11.)

**DISCUSSION**

I.     Preemption As To Arbitration

CCRRG argues that "the first issue this Court must decide on remand is whether LLRA preempts Arizona law (concerning garnishment or otherwise) from limiting the enforcement of the arbitration provision in the CCRRG insurance policy." (Doc. 113 at 2.) CCRRG contends that "[t]he Ninth Circuit specifically noted that it did not decide this issue and that it would leave it to this Court to decide the issue in the first instance." (*Id.* at 3.) Thus, CCRRG asks the Court to set a briefing schedule on the preemption issue. (*Id.*)

Plaintiffs disagree. (Doc. 112 at 2, 5-6.) In addition to previewing why they believe CCRRG's preemption arguments should fail on the merits, Plaintiffs argue that "CCRRG has waived the right to compel arbitration at such a late stage by its delay in bringing its Renewed Motion to Compel Arbitration and allowing the case to proceed on the merits as opposed to appealing, as was its right, Judge Logan's decision denying its original motion. By forcing [Plaintiffs] to litigate the merits of the Writ through the discovery deadline and through full briefing of dispositive motions, CCRRG acted inconsistently with its claimed right to compel arbitration to [Plaintiffs'] obvious prejudice." (*Id.*)

The Court concludes that the best and most efficient path forward lies in between the parties' proposals. On the one hand, the Court disagrees with Plaintiffs' contention that CCRRG has waived or forfeited its arbitration-related preemption argument. During the initial round of arbitration briefing, CCRRG raised the issue of LLRA preemption in its reply, as a rejoinder to Plaintiffs' arguments about Arizona public policy. (Doc. 22 at 5.) However, Judge Logan did not address the preemption issue in his order denying CCRRG's motion. (Doc. 27.) CCRRG again raised LLRA preemption in its renewed motion to compel arbitration (Doc. 63 at 10), but the Court did not address that issue in the order granting CCRRG's renewed motion given the Court's determination that Arizona's law of direct benefits estoppel supported CCRRG's position (Doc. 88). Now that the Ninth Circuit (via the Arizona Supreme Court) has reversed on the direct benefits estoppel issue, CCRRG's alternative preemption argument is ripe for resolution.

On the other hand, the Court rejects CCRRG's proposal to set a schedule for further briefing. CCRRG had a full and fair opportunity to raise the issue of LLRA preemption in its previous arbitration-related filings and the Court is hesitant to inject even more delay (and cost) into this case by requiring yet another round of arbitration-related briefing. Accordingly, the Court will simply rule, in due course, on CCRRG's arbitration-related preemption argument based on the existing briefing.

II.     Motion For Judgment On The Pleadings

One of the motions the Court previously denied as moot was CCRRG's Rule 12(c) motion for judgment on the pleadings. (Doc. 38.) In that motion, CCRRG sought judgment on the pleadings for two reasons: (1) the writ of garnishment "fails to comply with Federal Rules of Civil Procedure 1, 2, 3, 7, and 8 necessary to present the elements of a 'civil action" stating a 'short and plain statement of the claim for relief showing [Plaintiffs are] entitled to relief' against CCRRG"; and (2) "assuming for the sake of argument that Arizona garnishment law applies to this action, Plaintiffs have failed to comply with the requirements of A.R.S. § 12-1580(A), which required them both to object to CCRRG's Answer within ten days thereof and to request this matter be set for hearing." (*Id.* at 1-2.)

In response, Plaintiffs argued that CCRRG's motion should be denied in full. (Doc. 40.) Plaintiffs also argued that, "though not required to do so," they should be allowed to "replead more specifically the grounds upon which [they] allege[] in [their] garnishment action that CCRRG owes a debt (e.g. insurance coverage) to Capri" and "to separately and/or alternatively join claims for declaratory relief . . . and insurance bad faith." (*Id.* at 10-11.) However, Plaintiffs later filed a "Notice of Withdrawal" in which they retracted their request to replead their claims. (Doc. 80.)[3]

In their post-remand statements, both sides agree that CCRRG's second Rule 12(c) argument is foreclosed by the Ninth Circuit's ruling in this case. (Doc. 112 at 3; Doc. 113 at 4.)

As for CCRRG's first Rule 12(c) argument, Plaintiffs incorporate their previous position that repleading is unnecessary. (Doc. 112 at 2-4 & n.1.) They note that "CCRRG has never contended that the Writ is substantively defective under the Arizona garnishment statutes or that a Writ of Garnishment that is litigated in the Arizona courts would be subject to dismissal under the corollary Arizona Rules of Civil Procedure," further note that CCRRG has never "claimed [it does] not understand the factual and legal basis for [Plaintiffs'] claim that CCRRG is indebted to its insured, Casa de Capri, [for] a debt that has been garnished," and argue that "[g]iven the extent to which the parties' respective positions have been repeatedly set forth in this matter, including within the pleadings filed in connection with the [motion for summary judgment], to now argue that they require more detailed pleading would seem rather preposterous." (*Id.*) Meanwhile, CCRRG argues that (1) any ruling on the Rule 12(c) motion should be deferred until the Court resolves the arbitration-related preemption issue; and (2) alternatively, Plaintiffs' current pleading fails to state a claim under Rule 12(b)(6) because garnishment is not a cause of action or claim but simply a remedy. (Doc. 113 at 3-4.)

The Court concludes that CCRRG's Rule 12(c) motion should be denied. As an

---

[3] Plaintiffs may have overlooked the Notice of Withdrawal in the portion of their post-remand statement (Doc. 112 at 5) asking the Court to grant the repleading request set forth within Doc. 40. Because the repleading request was withdrawn, there is nothing to grant.

initial matter, it is unnecessary to postpone ruling on the motion until CCRRG's preemption-related arbitration argument is resolved.  CCRRG filed the Rule 12(c) motion in November 2018 (Doc. 38), about six months before it filed the renewed motion to compel arbitration (Doc. 63).  Additionally, although the Court previously chose, in the exercise of its discretion and in an effort to promote judicial efficiency, to rule on the renewed motion to compel arbitration before ruling on the Rule 12(c) motion (Doc. 79 at 1), the calculus has changed in light of intervening events.  This case has been pending for over four years, the parties have already endured one trip to the Ninth Circuit (with a detour to the Arizona Supreme Court), and it makes sense to resolve fully briefed issues that are ripe for resolution.

On the merits, the only disputed issue is whether Plaintiffs should be required to replead their claims.  As a general matter, the Court tends to agree that a plaintiff pursuing garnishment in state court should be required replead the claim after the action has been removed to federal court.  Indeed, Plaintiffs' current "pleading," which is their writ of garnishment, bears little resemblance to the sort of complaint that would ordinarily be required under Rule 7.  Nevertheless, under the unusual circumstances of this case, repleading is unnecessary.  In *Labertew*, the Ninth Circuit explained that when a garnishment proceeding is removed from Arizona state court, a "district court has discretion under Rule 81(c)(2) to order repleading." 846 F.3d at 1034.  However, the court also noted that, under Rule 81(c)(2), "repleading is unnecessary unless the court orders it." *Id.* at 1034 n.30.  The court also noted that upon the removal of a garnishment proceeding, the action becomes "in substance a claim by the insureds[] against the liability insurers for breaching their obligations under their insurance policies." *Id.*  Here, the substance of Plaintiffs' claim is crystal-clear to CCRRG, CCRRG has already filed an answer (Doc. 29), the parties have already fully briefed Plaintiffs' summary judgment motion, and CCRRG has separately requested permission to file its own summary judgment motion (a request that is addressed below).  Given this backdrop, it would be pointless to require Plaintiffs to go through the formality of repleading their claim.  *See generally* 2 Gensler, Federal Rules

of Civil Procedure, Rules and Commentary, Rule 81, at 505-06 (2022) ("A removing party must file with the federal court copies of all state court process, pleadings, and orders for that case to date.  Those state court pleadings—now filed with the federal court as part of the removal process—stand as the federal pleadings.  The parties do not need to file new pleadings unless the court orders them to do so.  The decision whether to require repleading lies within the district court's discretion.").

III.     Motion To Strike

Another of the motions the Court previously denied as moot was CCRRG's motion to strike.  (Doc. 75.)

Both sides agree that this motion may be re-denied as moot, albeit for a different reason than that previously identified by the Court.  (Doc. 112 at 5; Doc. 113 at 5.)  Accordingly, the motion will again be denied as moot.

IV.     Summary Judgment

The third motion the Court previously denied as moot was Plaintiffs' motion for summary judgment.  (Doc. 55.)

Both sides agree that this motion is no longer moot in light of the Ninth Circuit's reversal on the arbitration issue.  (Doc. 112 at 4; Doc. 113 at 4.)  CCRRG also requests permission to file its own cross-motion for summary judgment.  (Doc. 113 at 4-5.)  Plaintiffs oppose this request: "CRRG had more than adequate time to file any sort of cross Motion for Summary Judgment based on the completed discovery and well established record before the case was dismissed, but for strategic reasons chose not to do so.  They should not be allowed to do so now.  This case has long been delayed by CCRRG's multiple attempts to get second and third 'bites at the apple.'  Justice has been delayed too long for [Plaintiffs].  Yet another dispositive motion at this late stage should not be allowed." (Doc. 112 at 6-7.)

Although, for the reasons discussed above, the Court is loath to inject any more briefing cost and delay into this case, CCRRG's request for permission to file a cross-motion for summary judgment should be granted.  The date on which the Court issued the

now-reversed order granting CCRRG's renewed motion to compel arbitration (which also dismissed the action) was July 30, 2019. (Doc. 88.) At that time, the deadline for filing dispositive motions had not elapsed—under the scheduling order, the relevant deadline was September 30, 2019. (Doc. 33 at 5.) Thus, it cannot be said that CCRRG forfeited its ability to file an affirmative motion for summary judgment by waiting too long to file.

Accordingly, good cause exists to modify the scheduling order with respect to the dispositive motions deadline. CCRRG may file a motion for summary judgment within 30 days of the issuance of this order (*i.e.,* by July 7, 2022). Once that motion is fully briefed (and assuming the Court has not, in the interim, granted CCRRG's preemption-related arbitration request), the Court will resolve both sides' summary judgment motions.

V. <u>Amicus</u>

The fourth motion the Court previously denied as moot was the National Risk Retention Association's ("NRRA") motion to file an amicus brief in support of CCRRG's opposition to Plaintiffs' summary judgment motion. (Doc. 66.)

Both sides agree that this motion is no longer moot in light of the Ninth Circuit's reversal on the arbitration issue. (Doc. 112 at 4; Doc. 113 at 5.) Plaintiffs argue the Court should deny the request on the merits, for the reasons previously stated in their opposition to NRRA's motion (Doc. 71), while CCRRG argues the Court should grant the request on the merits.

"There appears to be no statute or rule which provides standards as to when a party should be granted leave to appear as *amicus curiae* at the district court level." *Dible v. City of Chandler*, 2004 WL 7336848, *1 (D. Ariz. 2004). As a result, district courts often "look to the Federal Rules of Appellate Procedure for guidance on whether leave should be granted." *Id.* Under those rules, "[t]he ultimate decision whether to permit a non-party leave to submit a brief, as *amicus curiae*, is a matter within the discretion of the courts. The classic role of *amici* is threefold: (1) to assist in a case of general public interest; (2) to supplement the efforts of counsel; and (3) to draw the court's attention to law that has escaped consideration. There is also no rule that amici must be totally disinterested." *Id.*

(citations omitted). *See also Miracle v. Hobbs*, 333 F.R.D. 151, 156-57 (D. Ariz. 2019) (noting that "[a]micus briefs are considered at the discretion of the Court" and granting request to file amicus brief "because the instant matter is one of public interest, and [amici] may be able to highlight arguments and/or relevant law that may otherwise escape the Court's consideration").

Applying these standards, the Court concludes that NRRA's motion should be granted. Although Plaintiffs note that NRRA may not be disinterested in the outcome of this action (Doc. 71 at 2), disinterest isn't a prerequisite to amicus participation. And more broadly, the Court may benefit from NRRA's discussion of the preemption issues raised in CCRRG's summary judgment response (which are distinct from the arbitration-related preemption issues as to which the Court has declined to allow supplemental briefing). Accordingly, the Court will order the Clerk of Court to file NRRA's amicus brief and allow Plaintiffs to respond to the brief.

VI. Attorneys' Fees

Following their victory in the Ninth Circuit, Plaintiffs filed an application for attorneys' fees, which the Ninth Circuit transferred to this Court for consideration. (Doc. 107.)

A. **The Parties' Arguments**

Plaintiffs seek $60,551 in attorneys' fees based on their successful appeal of the order compelling arbitration. (Doc. 109.) The statute on which Plaintiffs rely as the basis for their fee request is A.R.S. § 12-1580(E). (*Id.* at 1-2.) Plaintiffs contend that "[u]nder a similar Arizona statute [A.R.S. § 12-341.01] dealing with actions arising out of contract, an appellate court is authorized to make an award of fees on appeal even where the merits remain to be decided if the appeal resolves a significant separate legal issue central to the case and is sufficiently significant to be treated as a separate unit." (*Id.*, citing *Wagenseller v Scottsdale Mem'l Hosp.*, 710 P.2d 1025 (Ariz. 1985)). Plaintiffs contend that "[t]he conditions for an award under the *Wagenseller* rule apply here" because "[t]his appeal dealt with the separate and significant issue of whether [Plaintiffs] could be forced to arbitrate

their statutory garnishment claim." (*Id.*)

CCRRG opposes Plaintiffs' fee request. (Doc. 110.) First, CCRRG argues that the $9,994.50 portion of the request pertaining to the proceedings before the Arizona Supreme Court is improper because, under Arizona Supreme Court Rule 27(e), "[t]here shall be no application for costs or attorneys' fees made to this court in connection with a certification proceeding." (*Id.* at 5, 7.) Second, CCRRG argues that fees are categorically unavailable under A.R.S. § 12-1580 at this stage of the proceedings because the statute "contemplates consideration of an attorney's fee award to the prevailing party only after a hearing, which has yet to occur here." (*Id.* at 5-14.) Third, CCRRG argues that even if fees were theoretically available before a determination on the merits, a fee award would be improper under *Wagenseller* because Plaintiffs failed to address the *Wagenseller* factors in their application, Plaintiffs' case is being handled on a contingency basis (and thus they have not yet incurred any fees), and the issues raised in the appeal were novel. (*Id.* at 6, 14-18.) Fourth, CCRRG argues that Plaintiffs' fee request, even after reduction for the proceedings in the Arizona Supreme Court, is inflated and includes "billing for tasks that lack any meaningful description of the task being billed." (*Id.* at 18-20.)

In reply, Plaintiffs argue that their request for fees arising from the certification proceedings is proper because the request is not being directed to the Arizona Supreme Court (Doc. 111-1 at 1-2); that "[n]othing in A.R.S. § 12-1580(E) requires prevailing after a hearing on the merits" (*id.* at 2-3); that the *Wagenseller* rule should be deemed applicable to A.R.S. § 12-1580 because the concepts of "successful party" and "prevailing party" are identical in substance and Arizona courts have applied the *Wagenseller* rule "to other statutes beyond A.R.S. § 12-341.01" (*id.* at 3-5); that a discretionary award of fees would be appropriate under the *Wagenseller* factors (*id.* at 5-6); and that CCRRG's objections to the size of the fee request are vague, undeveloped, and at most target only $1,845 of the time entries (*id.* at 6-8).

B. **Analysis**

The statute giving rise to Plaintiffs' fee request, A.R.S. § 12-1580(E), provides in

relevant part that "[t]he prevailing party" in an action involving an objection to a writ of garnishment "may be awarded costs and attorney fees in a reasonable amount determined by the court."  This statute provides the "exclusive avenue for recovering fees in a garnishment proceeding." *Ironwood Commons Cmty. Homeowners Ass'n, Inc. v. Randall*, 439 P.3d 1193, 1198 (Ariz. Ct. App. 2019). *See also id.* ("[A]ttorneys' fees related to a garnishment for 'non-earnings' could be awarded only under A.R.S. § 12-1580(E).").

As a threshold matter, it is unclear whether Plaintiffs may, at this stage of the case, qualify as a "prevailing party" for purposes of § 12-1580(E).  Plaintiffs have not yet prevailed on the merits of their garnishment claim—instead, they have simply fended off CCRRG's attempt to compel arbitration of that claim.  Even though Plaintiffs correctly point out that Arizona courts have determined that a party may be considered "successful" or "prevailing" for purposes of other fee-shifting statutes by prevailing on a discrete issue on appeal (even though the appellate victory does not resolve the case on the merits), there are notable textual differences between those statutes and § 12-1580(E).  That provision, when read in context with the other subdivisions of § 12-1580, seems to contemplate a fee award only after the merits of an objection to a garnishment request have been resolved.[4]

---

[4]    A.R.S. § 12-1580 reads, in its entirety, as follows:

A.  A party who has an objection to the writ of garnishment, the answer of the garnishee or the amount held by the garnishee or a party claiming an exemption from garnishment, not later than ten days after the receipt of the answer, may file a written objection and request for hearing.  Copies of the objection shall be delivered to all parties to the writ at the time of filing the request for hearing form.

B.  The hearing on an objection to the writ, answer or amount on a claim of exemption shall be commenced within five days after the request, not including weekends and holidays, but may be continued for good cause on terms the court deems appropriate after due consideration of the importance of the judgment debtor's rights and the need for a speedy determination.  Good cause includes a situation in which the objection raised at the hearing is different from that set forth in the request for hearing.  The hearing shall not be held later than ten days from the date of the request unless the request for a continuance is made by the judgment debtor.

C.  A party requesting a hearing pursuant to this section is required to state the grounds for his objection in writing, but the objecting party is not limited to those written objections at the hearing conducted pursuant to this section.

D.  The court shall notify the parties of the date and time of the hearing at least two days, not including weekends and holidays, before the date of the hearing.

- 11 -

Here, of course, the merits remain unresolved.

Nevertheless, even if fees could be awarded at this juncture under A.R.S. § 12-1580(E), the Court would decline in its discretion to impose a fee award. In *Schooley v. Pena*, __ P.3d __, 2022 WL 1548481 (Ariz. Ct. App. 2022), the court encountered a similar situation. There, Schooley obtained a $525,000 judgment against Pena and then served a writ of garnishment on Pena's insurance company, Farmers Insurance Company ("Farmers"). *Id.* at *1. After Farmers failed to file timely objections, Schooley obtained a default judgment against Farmers, but Farmers then successfully moved to vacate the default judgment. *Id.* at *2. Schooley appealed the vacatur of the default judgment but the Arizona Court of Appeals affirmed. *Id.* at *2-4. As relevant here, Farmers then sought an award of its attorneys' fees on appeal, arguing that "Section 12-1580(E) provides for a discretionary fee award to the prevailing party in a garnishment proceeding." *Id.* at *4. Even though Farmers was "the successful party on appeal," the Arizona Court of Appeals "[i]n our discretion" denied the fee request. *Id.*

Like *Schooley*, this contested-garnishment action generated an appeal that did not resolve the merits of the objections to the garnishment claim. Even if it might be possible to award fees in these circumstances under the *Wagenseller* rule, the Court would decline to do so, just as the *Schooley* court declined to do so. If Plaintiffs prevail at the end of this action, they may then seek fees under § 12-1580(E).

…

…

…

…

…

…

---

E. The prevailing party may be awarded costs and attorney fees in a reasonable amount determined by the court. The award of attorney fees that are incurred due to the objection shall not be assessed against nor is it chargeable to the judgment debtor, unless the judgment debtor is found to have objected to the writ solely for the purpose of delay or to harass the judgment creditor.

- 12 -

Accordingly,

**IT IS ORDERED** that:

1. CCRRG's request to set a briefing schedule on the issue of arbitration-related preemption (Doc. 113 at 3) is **denied**. The Court will decide that issue in due course without the need for further briefing.

2. CCRRG's Rule 12(c) motion (Doc. 38) is **denied**.

3. CCRRG's motion to strike (Doc. 75) is **denied as moot**.

4. CCRRG's request to modify the scheduling order with respect to dispositive motions (Doc. 113 at 4-5) is **granted**. CCRRG may file a motion for summary judgment by **July 7, 2022**. Once that motion is fully briefed (and assuming the Court has not, in the interim, granted CCRRG's preemption-related arbitration request), the Court will resolve both sides' summary judgment motions.

5. NRRA's motion to file an amicus brief (Doc. 66) is **granted**. The Clerk of Court is directed to **file** the amicus brief that was lodged as an attachment to NRRA's motion (Doc. 66-1). Plaintiffs may file a response to that brief. The response is due on the same date as Plaintiffs' response to CCRRG's yet-to-be-filed summary judgment motion. No reply may be filed.

6. Plaintiffs' motion for attorneys' fees (Doc. 109) is **denied**.

Dated this 7th day of June, 2022.

Dominic W. Lanza
United States District Judge

- 13 -