**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacob Benson, et al., | No. CV-18-00006-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Casa De Capri Enterprises LLC, et al., | |
| Defendants. | |

## INTRODUCTION

Jacob Benson is a disabled vulnerable adult who received skilled nursing care at a now-defunct facility called Casa de Capri Enterprises LLC ("Capri"). In December 2012, Benson and other family members (together, "Plaintiffs") brought a negligence action against Capri in Arizona state court.

At the time, Capri had a "claims paid" insurance policy issued by Defendant Continuing Care Risk Retention Group, Inc. ("CCRRG"). Under this unusual type of policy, the insurer is only responsible for indemnifying the insured against claims that become payable while the policy remains in effect. In contrast, under an "occurrence" policy or a "claims made" policy (which are more common), the insurer becomes responsible for indemnification so long as the liability-generating event occurred (or was disclosed to the insurer) during the policy term.

CCRRG initially assumed the defense of Plaintiffs' lawsuit against Capri pursuant to Capri's insurance policy. However, after Capri became insolvent, stopped paying its

premiums, declared bankruptcy, and cancelled the policy, CCRRG withdrew the defense. Years later, after the bankruptcy stay was lifted, Plaintiffs obtained a $1.5 million judgment against Capri and then initiated this garnishment action against CCRRG.

In February 2023, after years of complicated litigation, the Court issued a lengthy order resolving the parties' cross-motions for summary judgment, holding that CCRRG had no duty under the relevant insurance policies to indemnify Capri for the judgment. (Doc. 149.)   However, in a footnote, the Court noted that it was unclear whether the summary judgment ruling was sufficient to fully dispose of the case, given that Plaintiffs had asserted during oral argument that they "also seek to recover under the theory that CCRRG breached its duty to *defend* Capri in the underlying lawsuit."  (*Id.* at 15 n.4.) Accordingly, the Court ordered the parties to submit supplemental briefing on "whether Plaintiffs may separately pursue relief in this garnishment action under a breach-of-the-duty-to-defend theory." (*Id.* at 41.)

Now pending before the Court are the parties' supplemental briefs.  (Docs. 156, 157.)  For the following reasons, the Court concludes that Plaintiffs adequately disclosed their intention to pursue relief under a breach-of-the-duty-to-defend theory.  To the extent the parties attempted, in their supplemental briefs, to go beyond the disclosure issue and address the merits of Plaintiffs' alternative theory, that briefing is undeveloped and premature.  Accordingly, and in an effort to ensure that the issues are presented in a procedurally appropriate format, the Court will authorize the parties to file a second round of summary judgment motions.

## BACKGROUND

I.   Relevant Facts

The background details of this case are set forth in the February 2023 summary judgment order.  (Doc. 149.)  An abbreviated summary is provided below to set the stage for the disputed disclosure issue.

On December 10, 2012, Plaintiffs filed suit in Maricopa County Superior Court against Capri, alleging abuse and neglect of a vulnerable adult and negligence.  (Doc. 65

¶ 1.)  At the time the lawsuit was served, Capri was insured under a "professional liability insurance policy" issued by CCRRG.  (Doc. 65 ¶ 3.)  The policy (the "2012 Policy") provided coverage from January 1, 2012 to January 1, 2013 and had a policy limit of $1 million.  (Doc. 56-1 at 36.)  Capri renewed its policy with CCRRG the following year (the "2013 Policy").  (Doc. 65 ¶ 4.)  The 2013 Policy provided coverage from January 1, 2013 to January 1, 2014.  (Doc. 13-1 at 5.)

The 2012 and 2013 Policies are "claims paid" policies.  (Doc. 132 ¶ 1.)  In the "Coverages" section of each policy, under the subheading "Insuring Agreement," CCRRG agreed to pay "amounts within the policy limits for 'Damages,' [and] 'Cost of Defense' . . . on behalf of a 'Member' *who becomes legally obligated to 'Pay' 'Damages' and 'Cost of Defense' during the time they are a CCRRG 'Member*.'"  (Doc. 13-1 at 13, emphasis added.)  In the subscription agreement, CCRRG elaborated that "[t]he terms and conditions of this type of coverage differ significantly from a typical occurrence or claims made indemnification insurance policy.  In essence, . . . CCRRG has no responsibility for any portion of a claim not actually paid during the contract period.  Under the Claims Paid policy losses are only covered by the Company if the insured is a Member of CCRRG when the payment is made . . . ."  (*Id.* at 58.)

Before the 2013 renewal, CCRRG offered Capri two renewal options: (1) to continue with the existing "claims paid" policy for $256,169.32; or (2) to switch to a "claims made" policy for $292,345.45.  (Doc. 132 ¶ 17.)  Capri chose the less expensive "claims paid" option.  (*Id.*)

On December 28, 2012, Capri was served in the Arizona state court lawsuit.  (Doc. 65 ¶ 2.)  It is undisputed that Capri timely reported the lawsuit to CCRRG, as it was required to do under the 2012 Policy.  (*Id.* ¶ 20.)  It is also undisputed that CCRRG accepted Capri's tender under the 2012 Policy and appointed defense counsel to defend the lawsuit without a written reservation of rights.  (*Id.* ¶¶ 21, 23.)

Regarding CCRRG's duty to defend, the 2012 Policy states: "Our right and duty to defend ends when we have exhausted the applicable limit of insurance by the payment of

'Cost of Defense'. . . under this Policy or, when this policy is cancelled or not renewed for any reason, provided however, in the event CCRRG is paying 'Cost of Defense'. . . CCRRG shall continue to pay 'Cost of Defense'. . . for all such 'Claims' for a period of time not to exceed thirty (30) days to enable such former 'Member' to assume its own legal defense." (Doc. 56-1 at 2.)  The relevant language in the 2013 Policy is identical. (Doc. 13-1 at 13.)

After CCRRG began providing a defense of the lawsuit, Capri defaulted on its obligation to pay certain deductibles. (Doc. 65 ¶ 24.)  As a result, Magnolia,[1] through Bates, sent Capri a letter on July 15, 2013 informing Capri of its "seriously delinquent" status "in meeting its insurance deductible payment obligations." (Doc. 56-6 at 1-2.)  The letter stated that CCRRG's board of directors could terminate Capri's membership for the outstanding delinquencies, in which case "Capri's right to continued coverage of existing open claims . . . may be at risk if the outstanding default in payment is not cured to the satisfaction of the [board]." (*Id.* at 1.)

On July 19, 2013, CCRRG and Capri agreed to a payment plan concerning the outstanding deductible obligation. (Doc. 65 ¶ 25.)  However, less than one month into that plan, Capri again defaulted. (*Id.*)  As a result, CCRRG again threatened action against Capri. (*Id.*)

On August 13, 2013, CCRRG issued a notice of intent to cancel the 2013 Policy, which stated that the Policy would be cancelled if Capri did not pay $22,270.03 by August 27, 2013. (Doc. 56-8 at 1; Doc. 65 ¶ 26.)

On August 19, 2013, Capri filed for bankruptcy. (Doc. 65 ¶ 27.)  Afterward, Plaintiffs' lawsuit against Capri was stayed. (Doc. 1-1 at 54-55, 58-59, 62.)

By August 22, 2013, CCRRG received notice of the bankruptcy. (Doc. 65 ¶ 33.)  That same day, the bankruptcy court authorized a debtor in possession loan for Capri "to immediately pay the . . . monthly premium for liability insurance of approximately

---

[1]     Magnolia LTC Management Services ("Magnolia") served as the program manager for CCRRG; Robert "Bob" Bates was Magnolia's president and CCRRG's corporate secretary. (Doc. 65 ¶ 13.)

$30,000." (Doc. 65-13 at 3 ¶ 7.)

On September 6, 2013, CCRRG rescinded its previously issued notice of intent to cancel. (Doc. 64 ¶ 35; Doc. 56-13.)

On September 20, 2013, the bankruptcy court approved the sale of Capri's assets to an unrelated party. (Doc. 65 ¶ 36.)

On September 25, 2013, Capri stopped payment on a pair of premium checks it had previously sent to CCRRG, which CCRRG had not yet deposited in light of the bankruptcy proceeding. (Doc. 65 ¶ 37.)

On October 18, 2013, Capri's agent sent an email to CCRRG requesting the cancellation of the 2013 Policy "effective 8/1/13." (Doc. 56-14 at 1-2.)[2]

Capri had the option to purchase an "Extended Reporting Period" upon cancellation of the 2013 Policy, which would have had the effect of maintaining indemnity coverage for existing claims that had not yet been paid. (Doc. 132 ¶ 24.) The premium for the Extended Reporting Period would have been "300% of the premium charged for the annualized 2013 Policy, or approximately $599,328.90." (*Id.* ¶ 26.) It is undisputed that Capri declined to purchase the Extended Reporting Period, although the parties previously disputed Capri's reasons for doing so.

On November 19, 2013, CCRRG (via Magnolia) sent a letter to Capri confirming that the 2013 Policy had been terminated as of August 1, 2013. (Doc. 65-19.) This letter further provided:

> This is a courtesy reminder that [Capri] elected to cancel its membership in the Continuing Care Risk Retention Group (CCRRG), which membership was terminated on August 1, 2013 and, . . . as a result of that cessation of membership, the obligation of CCRRG to make any payments under the above policy for indemnity ended as of that day. Moreover, the obligation

---

[2]   CCRRG did not accept the initial cancellation request because one of the reasons for the request that Capri provided in an accompanying form, *i.e.*, "Facility Sold," was inaccurate. (Doc. 56-14 at 1 ["Unfortunately, I cannot accept the Loss Policy Release as it stands. The signature dates reference 08/01/2013 and the reason for cancellation references both Requested by the Insured and Facility Sold. To the best of our knowledge the facility did not sell until sometime in October."].) In response, Capri's agent initially wrote: "What do you . . . want as the reason?" (*Id.*)  On October 22, 2013, Capri's agent submitted a revised cancellation request, again to be "effective 8/1/13," which identified the sole reason for the cancellation request as "requested by insured." (Doc. 56-15.)

of CCRRG to pay for the defense of the above claim ended thirty (30) days after the cessation of membership, or on August 31, 2013.

(*Id.* at 1.)

On August 14, 2014, defense counsel withdrew from representing Capri in Plaintiffs' lawsuit.  (Doc. 65 ¶ 47; Doc 1-1 at 65-66.)

In March 2015, Plaintiffs tendered a policy limits settlement demand to CCRRG, which was rejected.  (Doc. 65 ¶¶ 48-49.)  Plaintiffs then sought and obtained relief from the bankruptcy stay "in order to proceed to judgment against Capri"; the resulting order from the bankruptcy court stated that Plaintiffs could not "seek to enforce any such judgment against the estate."  (Doc. 65 ¶ 49; Doc. 56-20 at 2.)

Plaintiffs ultimately prevailed in their lawsuit against Capri.[3]  (Doc. 65 ¶ 50.)  On November 29, 2017, the superior court entered a final judgment in Plaintiffs' favor in the amount of $1,501,069.90.  (*Id.*)

On December 18, 2017, Plaintiffs applied for a writ of garnishment against CCRRG. (Doc. 1-2 at 233-35.)  In their application, Plaintiffs asserted that "[CCRRG] owes [Capri] money which was not earned by [Capri] for personal services" and "[CCRRG] is holding money for [Capri] which is not exempt from collection."  (*Id.* at 234-35.)  CCRRG answered that "[it] was not holding personal property or money belonging to [Capri]." (Doc. 29 at 3.)

II.   Relevant Procedural History

On January 2, 2018, CCRRG removed the garnishment action to federal court. (Doc. 1.)

On January 9, 2018, CCRRG moved to dismiss, or, alternatively, to stay litigation and compel arbitration.  (Doc. 13.)  On August 17, 2018, Judge Logan issued an order

---

[3]      The case did not proceed to trial.  In 2016, Plaintiffs filed several motions for entry of default, as well as a motion for default judgment, but these motions were denied because Capri had already filed an answer.  (Doc. 1-2 at 189-90.)  Later, in July 2017, Plaintiffs moved for summary judgment.  (*Id.* at 16-22.)  On September 28, 2017, after Capri failed to respond, the court granted Plaintiffs' summary judgment motion.  (*Id.* at 214-16.)

denying CCRRG's motion.[4]  (Doc. 27.)

On March 2, 2019, Plaintiffs moved for summary judgment.  (Doc. 55.)

On April 18, 2019, CCRRG filed a renewed motion to compel arbitration.  (Doc. 63.)

On July 30, 2019, the Court granted CCRRG's renewed motion to compel arbitration, denied Plaintiffs' motion for summary judgment as moot, and dismissed the case without prejudice.  (Doc. 88.)

Plaintiffs appealed the order compelling arbitration.  (Doc. 93.)  In November 2020, after full briefing and oral argument, the Ninth Circuit certified two questions of law to the Arizona Supreme Court.  *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1333 (9th Cir. 2020) ("We therefore certify the following questions to the Arizona Supreme Court: 1) In a garnishment action by a judgment creditor against the judgment debtor's insurer claiming that coverage is owed under an insurance policy, where the judgment creditor is not proceeding on an assignment of rights, can the insurer invoke the doctrine of direct benefits estoppel to bind the judgment creditor to the terms of the insurance contract?  2) If yes, does direct benefits estoppel also bind the judgment creditor to the arbitration clause contained in the insurance policy?").

In January 2022, the Arizona Supreme Court resolved the first question in Plaintiffs' favor, holding that "the doctrine of direct benefits estoppel can[not] be applied in an Arizona garnishment proceeding."  *Benson v. Casa de Capri Enters., LLC*, 502 P.3d 461, 465 (Ariz. 2022).  Based on this ruling, the Ninth Circuit issued an amended memorandum decision in March 2022 concluding that "the district court erred in granting CCRRG's motion to compel arbitration under the doctrine of direct benefits estoppel."  *Benson v. Casa de Capri Enters., LLC*, 2022 WL 822126, *1 (9th Cir. 2022).  In a footnote, the Ninth Circuit added: "CCRRG alternatively argues that the [LRRA] preempts state law governing the operation of risk retention groups, and apparently by extension precludes Arizona from

---

[4]     This case was originally assigned to Judge Logan and was transferred to the undersigned on October 31, 2018.  (Doc. 35.)

1    limiting arbitration provisions in insurance policies provided by a risk retention group.  The

2    district court did not address this argument and [Plaintiffs] argue that CCRRG did not

3    adequately raise it below.  We leave these matters to the district court in the first instance."

4    *Id.* at *2 n.1.

5          On June 7, 2022, after reviewing post-remand briefing from the parties (Docs. 112,

6    113), the Court permitted CCRRG to file its own motion for summary judgment.  (Doc.

7    115.)  The parties also filed a joint request to further brief the LRRA preemption issue on

8    an accelerated basis (Doc. 117), which the Court granted (Doc. 118).  The parties then filed

9    additional briefs on LRRA preemption.  (Docs. 119, 120, 123.)

10         On July 21, 2022, CCRRG filed its motion for summary judgment (Doc. 125).

11         On November 4, 2022, the Court denied CCRRG's renewed motion to compel

12    arbitration based on LRRA preemption.  (Doc. 138.)

13         On November 22, 2022, CCRRG appealed the Court's denial of the renewed motion

14    to compel arbitration.  (Doc. 139.)

15         On December 15, 2022, CCRRG filed a motion to stay proceedings pending its

16    appeal of the November 4, 2022 order denying arbitration.  (Doc. 141.)

17         On January 9, 2023, the Court denied the stay request.  (Doc. 144.)

18         On January 12, 2023, the Court issued a tentative ruling addressing the

19    cross-motions for summary judgment.  (Doc. 146.)

20         On January 24, 2023, the Court heard oral argument.  (Doc. 147.)

21         On February 6, 2023, the Court granted CCRRG's motion for summary judgment

22    and denied Plaintiffs' motion.  (Doc. 149.)  The Court concluded that, for various reasons,

23    the policies did not require CCRRG to indemnify Capri for Plaintiffs' judgment.  As noted,

24    the Court also ordered the parties to submit supplemental briefing on whether Plaintiffs

25    had separately asserted a garnishment claim premised on the theory that CCRRG had

26    breached its duty to defend Capri in the underlying lawsuit.  (*Id.* at 15 n.4, 41.)

27         …

28         …

**DISCUSSION**

I.      The Parties' Arguments

Plaintiffs contend that "from the outset of this case Plaintiffs have maintained that CCRRG is liable for the judgment entered against Capri due to its wrongful denial of coverage, *including its breach of its duty to defend Capri*.  This theory of liability for the judgment was disclosed in all Mandatory Initial Discovery Responses served upon CCRRG in this matter as well as multiple filed pleadings."  (Doc. 157 at 1.)  Elsewhere, Plaintiffs elaborate that their use of the word "coverage" in various disclosures was not "somehow limited to discussion of CCRRG's duty to indemnify Capri for the default judgment" and instead was intended "more broadly to encompass the duty to defend."  (*Id.* at 2.)  Plaintiffs also note that several of their disclosures specifically "noted that CCRRG's withdrawal of its defense was contrary to the 'duty to defend' clause of the 2012 Policy's insuring clause."  (*Id.* at 3.)  Finally, Plaintiffs contend that, on the merits, they will prevail on their duty-to-defend theory because "Arizona law has long held that an insurer that wrongfully refuses to defend its insured, does so at great risk and is bound by a judgment against its insured with respect to all matters which were litigated or could have been litigated in that action."  (*Id.* at 6-7.)

CCRRG disagrees.  (Doc. 156.)  CCRRG spends much of its brief arguing why, on the merits, any garnishment claim premised on a purported breach of the duty to defend will fail.  (*Id.* at 2-5.)  As for whether the claim is properly part of this case, CCRRG argues that Plaintiffs are "estopped from alleging damages for breach of the duty to defend at this stage in the litigation" because they previously denied that they were bringing any claims against CCRRG as assignees of Capri.  (*Id.* at 5-6.)  This is significant, according to CCRRG, because Plaintiffs can only advance the argument "that CCRRG breached its duty to defend Capri . . . as an assignee of Capri, not as a 'judgment creditor' in a 'garnishment action.'"  (*Id.* at 6-7, citing *Ring v. State Farm Mut. Auto. Ins. Co.*, 708 P.2d 457 (Ariz. Ct. App. 1985).)

…

1      II.     <u>Analysis</u>

2          Acknowledging that the issue presents a fairly close call, the Court concludes that

3 Plaintiffs adequately pleaded and disclosed their intention to pursue relief in this

4 garnishment action under a breach-of-the-duty-to-defend theory.  Thus, the February 2023

5 summary judgment order (which concluded that Plaintiffs are not entitled to relief under

6 their breach-of-the-duty-to-indemnify theory) does not dispose of the case.

7          Admittedly, Plaintiffs' application for a writ of garnishment is silent as to their

8 theory of liability.  (Doc. 1-2 at 234 ["Garnishee owes judgment debtor money which was

9 not earned by judgment debtor for personal services."]; *id.* ["Garnishee is holding money

10 for judgment debtor which is not exempt from collection."].)  But this is unsurprising, as

11 Plaintiffs simply provided the bare-bones details that are required by Arizona law.[5]  And

12 once CCRRG removed the action to federal court, Plaintiffs' garnishment application

13 became, for better or worse, their operative pleading.  *Labertew v. Langemeier*, 846 F.3d

14 1028, 1032 (9th Cir. 2017) ("[T]he garnishment proceeding against the insurers is, for

15 purposes of removal, a separate and independent civil action . . . ."); *id.* at 1033 ("[T]his is

16 a new civil action in which the Labertews and McDermotts are seeking to obtain, for the

17 first time, a judgment establishing the liability of the insurance companies.").  Upon

18 removal, CCRRG could have asked the Court to require Plaintiffs to replead their claims.

19 *Id.* at 1034 ("The rule that says what to do with a removed action is at Federal Rule of Civil

20 Procedure 81(c) . . . .  This means that the Arizona rules for garnishment proceedings were,

21 upon removal, supplanted by the federal rules.  The district court has discretion under Rule

22 81(c)(2) to order repleading.").  But CCRRG never did so.[6]  Under these circumstances, it

_____

23    [5]      A.R.S. § 12-1572 ("The application [for a writ of garnishment] shall contain the
following:  1.  A statement that the applicant is a judgment creditor.  2.  A statement that

24 the applicant has good reason to believe . . . [t]hat the garnishee is indebted to the judgment
debtor for monies that are not earnings. . . .  3.  The amount of the outstanding balance due

25 on the underlying judgment, together with interest, accrued attorney fees, including fees
for the garnishment, if allowed by the judgment or contract and accrued allowable costs,

26 on the date the application is made, and the rate at which interest accrues on that judgment,
or if no judgment has been entered, the amount of money damages requested in the

27 judgment creditor's complaint.  4.  The address of the garnishee.").

28    [6]      In fact, CCRRG actively opposed Plaintiffs' attempt to replead their claims (Docs.
40, 46), which ultimately led Plaintiffs to withdraw the request (Doc. 80).

cannot be said that Plaintiffs forfeited their ability to pursue relief under a duty-to-defend theory by failing to specifically assert that theory of liability in their pleading.

Instead, the analysis turns on whether Plaintiffs complied with other disclosure obligations related to their liability theories.  Because this case was filed in January 2018, it was (and remains) subject to the Mandatory Initial Discovery Pilot Project ("MIDP"), which applies to most civil cases filed in the District of Arizona between May 1, 2017 and May 1, 2020.  *See* D. Ariz. G.O. 17-08.  Under the MIDP, the parties "are ordered to provide mandatory initial discovery responses before initiating any further discovery in this case.  The responses are called for by the Court, not by discovery requests actually served by an opposing party."  *Id.* ¶ A.2.  "Each party's response must be based on the information then reasonably available to it," and a "party is not excused from providing its response because it has not fully investigated the case."  *Id.* ¶ A.3.  Additionally, "[t]he duty to provide mandatory initial discovery responses . . . is a continuing duty, and each party must serve supplemental responses when new or additional information is discovered or revealed."  *Id.* ¶ A.8.  As relevant here, the information that is subject to mandatory disclosure under the MIDP includes, "[f]or each of your claims or defenses, . . . the facts relevant to it and the legal theories upon which it is based."  *Id.* ¶ B.4.

On November 2, 2018, Plaintiffs served their first set of MIDP disclosures.  (Doc. 36.)  In response to the query "For each of your claims or defenses, state the facts relevant to it and the legal theories upon which it is based," Plaintiffs stated that "CCRRG's denial of coverage *and refusal to defend Capri* was a breach of its contract with Capri for at least the following reasons."  (Doc. 157-3 at 8, 15-16, emphasis added.)  Plaintiffs further argued that, under the Bankruptcy Clause, it was "undisputed that prior to the August 1, 2013 policy cancellation, CCRRG was obligated to defend Capri against the allegations in the Benson Lawsuit."  (*Id.* at 16-17.)  Based on that obligation and the Bankruptcy Clause, Plaintiffs argued that "where, as in this case, an insured member's insolvency caused the insured to cancel the policy, that cancellation cannot serve to 'relieve' CCRRG of its 'obligations' under the policy, *including the obligation to defend* and indemnify the

insolvent or bankrupt insured." (*Id.* emphasis added. *See also id.* at 17 ["CCRRG was admittedly obligated to defend Capri and did so until Capri's insolvency resulted in its cancellation of the 2013 Policy. Applying the Bankruptcy clause in this context does not increase the insurer's obligation where the insurer would have been obligated to provide coverage but for the insured's insolvency or bankruptcy."].) Elsewhere, under the heading "CCRRG's Bad Faith and Liability for the Judgment," Plaintiffs stated: "The courts in Arizona have held that liability insurers owe three duties to their insureds, two express and one implied. The express duties are the duties to defend and to indemnify." (*Id.* at 25.) The Court concludes that these references were sufficient to satisfy Plaintiffs' disclosure obligations under the MIDP in relation to their duty-to-defend theory.[7]

Notably, CCRRG's supplemental brief does not address (let alone dispute) the adequacy of Plaintiffs' MIDP disclosures in relation to the duty-to-defend theory. (Doc. 156.) Instead, CCRRG focuses on the fact that Plaintiffs previously filed a "Motion to Allow Repleading and Joinder of Claims" (Doc. 40), which would have added a new claim for insurance bad faith premised on allegations that "Plaintiffs are assignees of Capri's claims against CCRRG" and "CCRRG breached the duty of good faith and fair dealing . . . [when it] intentionally and without reasonable basis denied coverage for and withdrew its defense of Capri in the Underlying Lawsuit" (Doc. 40-1 at 9), only to later withdraw that motion in an effort "[t]o avoid any suggestion that Plaintiffs are 'exploiting' the CCRRG policy in question or otherwise seeking 'direct benefits' under such policy." (Doc. 80.) In CCRRG's view, this episode should be viewed as estopping Plaintiffs from advancing any duty-to-defend claim now. (Doc. 156 at 5-6.)

If the duty-to-defend references in the proposed (and then withdrawn) amended pleading had been Plaintiffs' only references to a potential duty-to-defend theory, the disclosure analysis might be different. But as noted, Plaintiffs have now shown that they

---

[7]    Although the Court expressed skepticism, in the February 2023 summary judgment order, about the adequacy of Plaintiffs' disclosures related to the duty-to-defend theory (Doc. 149 at 15 n.4), Plaintiffs' actual MIDP disclosures (Doc. 157-3) were not before the Court at that time. For the reasons discussed in this order, those disclosures are sufficient to address the perceived deficiencies.

adequately disclosed this theory in their November 2, 2018 MIDP disclosures, which were provided to CCRRG several weeks before Plaintiffs filed the motion to allow repleading.

To be clear, the Court expresses no opinion on whether Plaintiffs can actually prevail on a duty-to-defend theory in this garnishment action, in which they are suing in their capacity as judgment creditors of Capri (as opposed to as assignees of Capri). The ruling here is narrow and addresses only Plaintiffs' compliance with their pleading and disclosure obligations. It would be procedurally inappropriate to go any further and reach the merits of the duty-to-defend claim (including CCRRG's estoppel defense to the claim) at this time. *Cf.* Fed. R. Civ. P. 56(f) (a court may not grant summary judgment to a non-movant, or on grounds not raised by a movant, without providing notice and a reasonable time to respond). Thus, the parties are authorized to file successive motions for summary judgment, which shall be limited to the duty-to-defend theory.

Accordingly,

**IT IS ORDERED** that the parties may file successive motions for summary judgment within 30 days of this order.

Dated this 11th day of April, 2023.

_____
Dominic W. Lanza
United States District Judge